IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEVI GUPTON,<br>*Plaintiff,*<br><br>v.<br><br>CITY OF PHILADELPHIA, et al.,<br>*Defendants.* | CIVIL ACTION<br>NO. 17-3987 |

**Jones, II  J.**                                                                                      **February 14, 2019**

## MEMORANDUM

*Pro se* Plaintiff Levi Gupton ("Gupton") filed this action pursuant to 42 U.S.C. § 1983, alleging a violation of his Eighth Amendment rights due to the conditions of his confinement while imprisoned at the Philadelphia House of Corrections ("HOC"). Pending before the Court is Defendants' Lawton (Warden), Marinda (Major), Moody (Captain), Holt (Captain), and Hamilton (C/O) (collectively, the "Moving Defendants") Motion to Dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court will grant Defendants' Motion to Dismiss the Amended Complaint and grant Gupton leave to amend.

## STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted). In the context of a *pro se* complaint, courts should apply the most liberal, but reasonable, construction of the complaint possible. *Davis v. City of Philadelphia*, 2013 WL 1187086, at *2 (E.D. Pa. Mar. 22, 2013) (citing *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007)).

1

Nevertheless, whether counseled or *pro se*, a complaint based upon "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." *Fowler v UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Ashcroft v Iqbal*, 556 U.S. 662, 678 (2009)). This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "[A]ll civil complaints must now set out sufficient factual matter to show that the claim is facially plausible." *Fowler*, 578 F.3d at 210 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atlantic Corp. v Twombly*, 550 U.S. 544, 556 (2007)).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Gupton's claim stems from a period of incarceration at HOC in 2017. Public dockets reflect that Gupton had several charges filed against him in the two years preceding his imprisonment at HOC. *See Commonwealth v. Gupton*, Docket No. MC-51-CR-0037502-2017 (Phila. Cty. Common Pleas), *Commonwealth v. Gupton*, Docket No. CP-51-CR-0000689-2017 (Phila. Cty. Common Plea), *Commonwealth v. Gupton*, Docket No. MC-51-CR-0039927-2015 (Phila. Cty. Common Pleas). However, it is unclear whether Gupton was housed at HOC pursuant to a conviction or as a pretrial detainee.

Gupton is presently incarcerated at SCI-Graterford, but he alleges that while imprisoned at HOC he was exposed to "filthy, unsanitary, cruel conditions." (ECF No. 11, pp. 1, 3). Gupton alleges that HOC had dirty air, asbestos, plaster falling from the ceiling, and paint chips falling from the walls of his cells. (ECF No. 11, pp. 3, 9, 12). He claims that these conditions of

2

confinement caused him to experience breathing problems, bad headaches, and blurred vision. (*Id.*; ECF No. 11, 17-22).

Beginning on February 6, 2017, Gupton began submitting grievances regarding his conditions of confinement. (ECF No. 11, p. 15). He complained that white residue and paint chips were falling from the walls onto people in their cells, and that there were a "bunch" of mice and roaches on his block - G1. (ECF No. 11, p. 15). Prior to submitting his written grievance, Gupton spoke with "Miranda and Cpt. Holt" about these issues and his desire to live in a healthy environment. (*Id.*).

On April 21, 2017, Gupton filed a grievance after speaking with "Mr. Hamilton," "Capt. Holt," and "Cpt. Moody." He complained that the mice in his cell were eating all of his food, paint chips and white residue were falling from the ceiling, the showers had mold, and the living conditions were causing him to have stomach pains." (ECF No. 11, p. 14).

On June 30, 2017, Gupton filed another grievance stating that he had asked "Major Miranda, Cpt. Moody, [and] Cpt. Holt" about the poor condition of the prison, including too few fans and shower curtains, and leaky pipes. (ECF No. 11, p. 10). He reiterated these complaints in grievances filed on July 10, 2017 and July 13, 2017. (ECF No. 11, pp. 13, 16).

On August 11, 2017 and August 13, 2017, Gupton filed grievances about mold in the showers, leaky pipes, an inability to clean his cell, and a roach infestation while housed on the F-1 block. (ECF No. 11, pp. 10, 11). Gupton states in his August 13th grievance that at times the roaches crawl into bed with him and the mice attack his commissary box. (ECF No. 11, p. 12).

Gupton also filed five Sick Call Requests from March through August 2017. On March 22nd, June 30th, August 17th, and August 19th he filed requests related to "medical" issues including, headaches, dizziness, and difficulty breathing. (ECF No. 11, pp. 17, 20-22). The last

3

two Sick Call Requests are categorized as "mental health" requests. One, submitted on May 28th, requests an increase in his medication because he was becoming more depressed. (*See* ECF No. 11, p. 19). The second is a duplicate of his June 30th medical request, except that it is categorized as a mental health request. (ECF No. 11, p. 18).

To address these concerns, Gupton filed a Complaint on October 16, 2017, *in forma pauperis*, against Blanche Carney, the City of Philadelphia, and the Mayor of Philadelphia. (*See* ECF Nos. 5-6). He then Amended his Complaint on May 4, 2018 and replaced the originally-identified defendants with the Moving Defendants. The Moving Defendants subsequently filed the instant Motion to Dismiss pursuant to Rule 12(b)(6).

## DISCUSSION

Gupton alleges that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment because of prison conditions at HOC which, according to the Amended Complaint, include exposure to roaches, rats, mold in showers, falling paint chips, asbestos, leaky pipes, too few fans, and too few shower curtains. Although Gupton only raised an Eighth Amendment claim, due to the uncertainty of Gupton's custody status while at HOC, the Court will construe the Amended Complaint as raising a claim under the Fourteenth Amendment as well. After a liberal construction of the Amended Complaint the Court holds that Gupton did not plead a constitutional violation, and thus, has failed to state a § 1983 claim against the Moving Defendants. Accordingly, the Amended Complaint is dismissed, and Gupton will have one final opportunity to amend.

4

## I. Constitutional Violation

### A. Eighth Amendment

To state a claim under § 1983, a plaintiff must establish that a person acting under the color of state law deprived him of a constitutional or federal statutory right. *Morrow v. Balaski*, 719 F.3d 160, 165-66 (3d Cir. 2013). To premise a § 1983 claim on an Eighth Amendment violation based on the conditions of confinement, a plaintiff must establish that a prison official's acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

To meet this standard, Gupton must "establish both an objective element—that the deprivation was sufficiently serious—and a subjective element—that a prison official acted with a sufficiently culpable state of mind, i.e. deliberate indifference." *Thomas v. SCI-Graterford*, No. 11-6799, 2014 WL550555 at *4 (E.D. Pa. Feb. 12, 2014) (internal citations omitted). When evaluating Gupton's Amended Complaint, the Court must "consider the totality of the circumstances of his confinement," including "the length of time [he was] exposed to the conditions at issue." (*Id.*). However, in determining whether the conduct alleged comports with "evolving standards of decency," *see Rhodes*, 452 U.S. at 347, the Court must also be sure not to impose its "own notions of enlightened policy." *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (Stewart, J., concurring).

Gupton's complaints generally concern what he deemed to be unsanitary conditions. He claimed that there were roaches and rats in his cell, paint chips falling from the wall onto his head, leaky pipes, mold in the showers, and asbestos. (ECF No. 11, pp. 3, 14-15). He also alleged that there were too few fans and shower curtains. (ECF No. 11, pp. 3, 10). As a result of

5

these conditions, Gupton complains that he experienced breathing problems, headaches, an insect bite, and stomach pains. (ECF No. 11, p. 3).

Gupton is entitled to "humane conditions of confinement," which include receiving "adequate food, clothing, shelter and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). However, courts have not held that the conditions he describes amount to a violation of the Eighth Amendment. *Williams v. Lyons*, No. 89-2278, 1989 WL32764 at *1 (E.D. Pa. 1989) (holding that there was no Eighth Amendment violation where plaintiff alleged "exposure to asbestos, lead poisoning from paint, rats and bugs"); *Hill v. Smith*, No. 05-1724, 2005 WL2666597, at *7 (M.D. Pa. Oct. 19, 2005) (holding that the presence of mice and cockroaches in plaintiff's cell, though "admittedly uncomfortable" and the cause of some discomfort, did not rise to the level of an Eighth Amendment violation) (citing *Rhodes* 452 U.S. at 339).

The Court bears in mind that Gupton made several complaints about his conditions of confinement over a period of months about multiple housing blocks. Specifically, Gupton submitted grievances on February 5th, April 21st, June 30th, July 10th, July 13th, August 11th, August 13th, and August 21st. In his February 5th, August 11th, and August 13th grievances Gupton claimed there was an infestation of roaches and mice. (ECF No. 11, pp. 12, 15). However, "[c]ourts have routinely recognized that keeping vermin under controls in jails, prisons and other large institutions is a monumental task, and that failure to do so, without any suggestion that it reflects deliberate and reckless conduct in the criminal law sense, is not a constitutional violation." *Holloway v. Cappelli*, No. 13-3378, 2014 WL 2861210, at *5 (D.N.J. June 24, 2014) (citing *Chavis v. Fairman*, 51 F.3d 275, *4 (7th Cir. 1995). In the remainder of his grievances Gupton complained of too few fans, leaky pipes, paint chips and white residue falling from the ceiling, and mold in the showers. (ECF No. 11, pp. 9-10, 13-15). However,

courts also consistently have held that these conditions do not warrant Eighth Amendment protections. *See Gonzalez v. Lyons*, No. 89-3711, 1989 WL66386, at *1 (E.D. Pa. June 15, 1989) (dismissing a complaint alleging exposure to asbestos, lead poisoning from paint, and broken showers).

Thus, under the totality of the circumstances, the Court does not find that Gupton's conditions of confinement while at HOC imposed a "wanton and unnecessary infliction of pain." *Rhodes*, 452 U.S. at 347; *see, e.g., Kost v. Kozakiewicz*, 1 F.3d 17 (3d Cir. 1993). Here, where Gupton has only alleged one insect bite and few instances of headaches, dizziness, and blurred vision, there is not a sufficient showing that any of the conditions described by Gupton individually, or in the aggregate, impacted him to a degree constituting cruel and unusual punishment. Discomfort with one's conditions of confinement are not enough. Gupton had to show an extreme deprivation that did not comport with "evolving standards of decency." *Rhodes*, 452 U.S. at 347. The Court is sympathetic to Gupton's claims, however it "may not impose upon a prison its notions of enlightened policy." *Rummel*, 445 U.S. 263 at 285. Unfortunately, where the conditions Gupton describes are not abnormal for many non-institutionalized individuals, the court is unable to find that he was deprived of the "***minimal*** civilized measure of life's necessities". *Rhodes*, 452 U.S. at 347 (emphasis added); *accord Gonzalez*, 1989 WL66386, at *1.

B. Fourteenth Amendment

As it is unclear whether Gupton's incarceration at HOC resulted from a conviction or his status as a pretrial detainee, the Court will construe the Amended Complaint as also stating a claim under the Fourteenth Amendment. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005) (noting that the Eighth Amendment governs claims brought by convicted inmates

7

challenging their conditions of confinement, while the Due Process Clause of the Fourteenth Amendment governs claims brought by pretrial detainees). To establish a Fourteenth Amendment violation, a prisoner must establish that the conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). That inquiry generally turns on whether the conditions have a purpose other than punishment and whether the conditions are excessive in relation to that purpose. *See id.* at 538-39; *Hubbard*, 399 F.3d at 158.

For the reasons set forth above, Gupton also fails to allege that his conditions of confinement while at HOC amounted to punishment. There is nothing to suggest that the conditions alleged by Gupton were something more than those attendant to incarceration in a large facility. Accordingly, Gupton has failed to plead a constitutional violation.

## II. Moving Defendants' Personal Involvement

The Court need not address the Moving Defendants' personal involvement in the alleged acts due to its finding that Gupton's claim does not plead a constitutional violation. Nevertheless, the Court will address this prong of the analysis because Gupton will have an opportunity to amend his Complaint.

A defendant's personal involvement in, personal knowledge of, or acquiescence in an alleged wrong is necessary to sustain a § 1983 claim. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Defendants argue that Gupton has failed to demonstrate the personal involvement of any of the Moving Defendants. They allege that Gupton, "[a]t most . . . filed 'several' grievances and spoke to several 'high ranking officers' about his complaints." (ECF No. 14, p. 3). According to Defendants, these allegations are not enough where Gupton failed to "identify a single Defendant by name as having received these grievances, been responsible for

8

reviewing the grievances, or been responsible [sic] the conditions that resulted in Plaintiff's alleged injuries." (*Id.*). The Moving Defendants are incorrect.

Gupton appended several grievances to his Amended Complaint. (*See* ECF No. 11, pp. 10-14). Liberally construing the allegations in the Amended Complaint to include the statements in the appended grievances, the Court finds that Gupton plausibly pled the personal involvement of all the Moving Defendants except for Defendant Lawton. In all but one grievance, Gupton identifies the Moving Defendants as individuals with whom he attempted to informally resolve his complaints prior to submitting a written grievance. (*Id.*). By unsuccessfully attempting to resolve his concerns with the defendants identified in his grievances, Gupton has plausibly pled their personal knowledge of, and possibly acquiescence in, the alleged wrongs. *Rode*, 845 F. 2d at 1207. The only exception is Defendant Lawton. (ECF No. 11, p. 12). Gupton states in a grievance that he asked to speak to Defendant Lawton, but there is nothing in the Amended Complaint or the attached exhibits suggesting that he did.

Consequently, if Gupton files a second amended complaint that states a constitutional violation, the Court will not permit this case to proceed against Defendant Lawton without well-pled factual allegations demonstrating his personal involvement. However, a plausibly pled second amended complaint will be permitted to proceed against the other Moving Defendants.

## CONCLUSION

For the foregoing reasons, the Court will grant Moving Defendants' Motion to Dismiss. However, the Court will give Gupton an opportunity to file a second amended complaint in the event he can state a plausible constitutional violation. If Gupton simply reiterates the same allegations and claims from his Amended Complaint, the Court will *sua sponte* dismiss the

9

second amended complaint given Gupton's *in forma pauperis* status, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

BY THE COURT:

_____
C. DARNELL JONES, II, J.